USDC SDNY
DOCUMENT ELECTRONICALLY
FILED
DOC#: _____
DATE FILED:  9/11/2017

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

     **UNITED STATES OF AMERICA**        :

            **-against-**          :

                          :        **16-CR-467**

     **NORMAN SEABROOK AND MURRAY**     :

     **HUBERFELD,**            :        <u>**OPINION AND ORDER**</u>

                          :

                 **Defendants.**  :

                          :

                          :

------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Before the Court are Defendant Murray Huberfeld's pretrial motions to (1) dismiss the indictment or, in the alternative, suppress certain recordings because the Government failed to comply with 18 U.S.C. 2517(5); (2) suppress certain recordings because the Government failed to comply with Title III's minimization requirement; (3) dismiss the indictment because the honest services fraud statute is unconstitutionally vague as applied, and (4) order the early production of impeachment material and an evidentiary hearing to determine whether the government's cooperating witness is in compliance with his cooperation agreement. Defendant Norman Seabrook joins in these motions. ECF No. 73. For the reasons that follow, all of Defendants' motions are denied.

## BACKGROUND

      Norman Seabrook and Murray Huberfeld are charged with two counts of (1) conspiracy to commit honest services wire fraud and (2) honest services wire fraud. The Indictment alleges that Norman Seabrook, then president of the Corrections Officers Benevolent Association ("COBA"), steered COBA members' retirement money into the hedge fund Platinum Partners in exchange for a personal payment by Platinum Partners. The Indictment also alleges that

Huberfeld, who participated in managing Platinum Partners, facilitated the payment to Seabrook.

## DISCUSSION

1. <u>Wiretap Recordings</u>

As a matter of background, the Government obtained approval to wiretap Hamlet Peralta as part of its investigation into wire fraud, illegal liquor distribution, and other offenses. During the course of the investigation and as a result of it, in February 2015, the Government sought and received additional authorization to wiretap the cellular phones of Jona Rechnitz and Jeremy Reichberg to investigate several crimes, including honest services fraud. During the interception period relating to each of the orders of interception on Rechnitz's cellphone and Reichberg's cellphone, the Government submitted to the district court periodic reports describing the progress of the interception. In its progress reports, the Government disclosed two conversations that Huberfeld participated in. Subsequently, the issuing court approved the continuation of the wiretaps on Peralta, Rechnitz, and Reichberg. Although the honest services fraud first investigated by the government involved some of the same criminal participants as the honest services fraud charged in this indictment, the initial honest services fraud involved several high level members of the New York City Police Department in an illegal liquor distribution scheme. While listening to calls concerning the first honest services fraud, law enforcement overhead calls related to the honest services fraud charged in the indictment.

Defendants ask the Court to dismiss the Indictment or, in the alternative, to suppress certain wiretap conversations because the Government violated Section 2517(5) of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. Section 2517(5) provides that evidence obtained through electronic surveillance relating to crimes that were not set forth in the authorization orders cannot be used or disclosed as evidence in any proceeding unless judicial

approval is timely secured by the Government.  18 U.S.C. § 2517(5).  Defendants argue that the

Government violated this provision because the evidence against Huberfeld and Seabrook

obtained via the wiretaps were not related to the targeted honest services fraud or other offenses

set forth in the wiretap applications and orders.  The Court disagrees as the interception was

lawful as to Defendants.

When lawfully investigating a crime, a law enforcement officer is not required to ignore

evidence of another crime if that evidence is in plain view; in the context of wiretaps, the plain

view doctrine has been codified in 18 U.S.C. 2517(5).  *See United States v. Giordano*, 172 Fed.

App'x 340, 342 n.2 (2d Cir. 2006).  Thus, it is well-established that there is implicit

authorization under Section 2517(5) when a judge grants a continuance of the wiretap, even

though the offense was not listed in the original wiretap order, as long "as the judge was made

aware of material facts constituting or clearly relating to [the] other offenses in the application

for the continuance." *United States v. Ardito*, 782 F.2d 358, 362 (2d Cir. 1986) (citing *United

States v. Masciarelli*, 558 F.2d 1064, 1067-1068 (2d Cir. 1977)).  Here, the Government

disclosed two Huberfeld conversations with Rechnitz and Reichberg in its progress reports to the

reviewing court, thus providing a basis to believe that Huberfeld was involved in the conspiracy

to commit honest services fraud.  Accordingly, there was authorization pursuant to Section

2517(5).  It is of no consequence that that the affidavits submitted to the courts for approval do

not mention honest services fraud in the context of the allegations made here against Huberfeld

(and Seabrook), because the interception was nonetheless lawful.  *United States v. Loften*, 518 F.

Supp. 839, 844 (S.D.N.Y. 1981) ("Even if the conversations were not evidence of narcotics

offenses as to which probable cause had been established, the interception would still have been

lawful, since conversations pertaining to other crimes can be overheard if the issuing judge is

subsequently apprised of this fact, so as to insure that the original wiretap order was not being

used as a mere pretext for subsequent interception."), *aff'd* 819 F.2d 1130 (2d Cir. 1987).

Because the Government was in compliance with Section 2715(5), the motion to dismiss the

indictment or, in the alternative, suppress the wiretapped conversations is denied.

2. <u>Minimization</u>

     Huberfeld argues that non-pertinent calls intercepted on Rechnitz's and Reichberg's cell

phones should be suppressed.  In order to challenge minimization, the individual must have

standing.  Only a person with a possessory or proprietary interest in the device being intercepted

has the standing to contest the minimization procedures employed by law enforcement agencies.

*United States* v. *Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991).  Huberfeld lacks possessory or

proprietary interest in Rechnitz's and Reichberg's cell phones.  *United States v. Gotti*, 42 F.

Supp. 2d 252, 268 (S.D.N.Y. 1999) (holding that defendant who "was intercepted [] not on his

line . . . lack[ed] standing to make a minimization challenge").  Accordingly, he lacks standing,

and the motion to suppress the calls is denied.

3. <u>Void for Vagueness</u>

     Defendants also argue that the federal honest services fraud statute is unconstitutionally

vague as applied to Seabrook's relationship to COBA because the statute fails to define the scope

of the fiduciary duty.  Specifically, Defendants argue, Seabrook was not aware that his fiduciary

duty to COBA included a duty not to accept "third party payments" as the COBA by-laws or

corporate policies did not explicitly prohibit this.  The Court disagrees.

     The void for vagueness doctrine requires that a "penal statute define the criminal offense

with sufficient definiteness that ordinary people can understand what conduct is prohibited and

in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v.*

*Nadirashvili*, 655 F.3d 114, 121 (2d Cir. 2011) (quotation marks omitted).  The federal honest

services fraud statute, 18 U.S.C. § 1346, proscribes "fraudulent schemes to deprive another of

honest services through bribes or kickbacks supplied by a third party who had not been deceived."

*Skilling v. United States*, 561 U.S. 358, 404 (2010).

Defendants lift their reasoning from Justice Scalia's concurrence in arguing that the

source and nature of the fiduciary duty directly affects what constitutes a violation and here

specifically, a kickback, for the purposes of the statute.  However, the majority in *Skilling*

rejected that contention.  By narrowing the proscribed conduct to bribes and kickbacks, the

majority repaired any vagueness problem with the statute.  And directly responding to Justice

Scalia's concurrence on the impact and scope of fiduciary duties, the majority explained that

debates concerning the source and scope of fiduciary duties were "rare" in bribery and kickback

cases prior to the creation of the honest services statute, and the "[t]he existence of a fiduciary

relationship, under any definition of that term, was usually beyond dispute." *Skilling*, 561 U.S.

at 407 n.41.  As an example of a fiduciary relationship, the majority cited the relationship

between union officials and union members.  *Id.*  It is undisputed here that Seabrook, as union

boss, had a fiduciary relationship to COBA; no further inquiry in the scope and nature of that

relationship is necessary.  Accordingly, there is no notice problem with what entails a kickback

here.  *See Skilling*, 561 U.S. at 412 ("As to fair notice . . . it has always been 'as plain as a

pikestaff that' bribes and kickbacks constitute honest-services fraud, and the statute's *mens rea*

requirement further blunts any notice concern.").  The statute is not unconstitutionally vague as

applied to Seabrook here, and the motion to dismiss on those grounds is denied.

4. Early Disclosure of Impeachment Materials

Defendants request that the Government produce Rechnitz impeachment evidence to the

Defense earlier than two weeks before trial and also seek an evidentiary hearing to determine

whether Rechnitz is adhering to his cooperation agreement.  As for early disclosure, the Second

Circuit holds that that *"Brady* and its progeny do not require the immediate disclosure of all . . .

impeachment material upon request by a defendant" and that such material needs to be disclosed

"in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).

The government has offered to disclose such materials two weeks prior to trial, which is enough

time for its effective use.  Therefore, the request is denied.  As for Defendants' novel request for

an evidentiary hearing on the issue of whether Rechnitz is complying with his cooperation

agreement, Defendants have provided no case law on point to demonstrate that the Court is

permitted to conduct such an inquiry; let alone order an evidentiary hearing on the issue.  *Cf.*

*United States v. Solomonyan*, 451 F. Supp. 2d 626, 648 (S.D.N.Y. 2006) (rejecting request for a

pretrial evidentiary hearing to determine the admissibility of codefendant's statements as doing

so would lead "to staging a mini-trial that would significantly prolong the proceedings and afford

the defendants a complete preview of the government's evidence").  Accordingly, this request,

too, is denied.

## CONCLUSION

For the foregoing reasons, all of the Defendants' pretrial motions are denied.


**SO ORDERED.**

Dated:        **September 11, 2017**
              **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**